IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
CA No. 7:19-CV-108

PHILLIP SCOTT, on behalf of himself and all
others similarly situated,

    *Plaintiff*,

    v.

J&K DRYWALL, INC. d/b/a K&J
CONSTRUCTION, FRAMING, AND
HANGING; JAMES MALLOY; FRANCES
MALLOY; COLLINS & WRIGHT, INC.;
and BALFOUR BEATTY
CONSTRUCTION, LLC,

    *Defendants*

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**COLLECTIVE/CLASS ACTION
COMPLAINT**

Plaintiff, Phillip Scott, on behalf of himself and all others similarly situated (collectively "Plaintiffs"), by and through undersigned counsel, hereby sets forth this collective action for violations of the Fair Labor Standards Act ("FLSA") under § 216(b) against Defendants J&K Drywall, Inc. and James Malloy ("K&J Defendants"), Collins & Wright, Inc. ("Collins & Wright"), and Balfour Beatty ("Balfour Beatty") (collectively "Defendants"), and alleges as follows:

## PRELIMINARY STATEMENT

1.    This action arises out of Defendants' systemic failure to compensate Plaintiffs for all hours worked and for overtime hours worked at time and half for all hours over 40 per week in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, *et seq.*

2.    Plaintiffs consist of current and former laborers, who are compensated on an hourly basis. Throughout the relevant period, Defendants have maintained a corporate policy of failing to

compensate Plaintiffs for all hours worked, including travel time from the required pick up location for equipment prior to traveling to the jobsite; traveling back to the same location to drop off equipment prior to traveling home; or a designated meeting location prior to and following the end of the day where Plaintiffs met to travel together to South Carolina and ride back to North Carolina together in Defendants' vans. This work was required to either pick up materials or to ensure timeliness at the jobsite and avoid absences. Moreover, Plaintiffs were not allowed to record all of their hours worked, so as stated, they were not compensated for all hours worked. In short, Defendants violated the FLSA by not compensating Plaintiff and all those similarly situated for all hours worked or any hours worked in excess of forty (40) per week as required by law.

3.     All Defendants through their foremen were aware that Plaintiffs were either working long hours to meet the project demands and timely completion of the project and/or that they were engaged in pre- and post- shift activities due to the requirement of arriving at Defendants' designated pick-up location by a certain time and travelling to together to and from South Carolina.

4.      Plaintiffs routinely worked 40 hours or more per week, without accounting for pre- and/or post-shift work. When pre- and post- shift work/travel is included, Plaintiffs worked approximately eighteen (18) additional hours a week.

5.     Defendants' practices of failing to compensate Plaintiffs for all pre- and/or post-shift work violated Plaintiffs' rights under the FLSA and the NCWHA.

6.     Plaintiffs bring this action for violation of the FLSA as a collective action, pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of the following class:

> All non-exempt employees of J&K Drywall, Inc. d/b/a K&J Construction, Framing, and Hanging; James Malloy, Francis Malloy, Collins & Wright, Inc., and Balfour Beatty Construction, LLC who worked at least 40 hours in one full workweek within three years prior to the commencement of this action, through the present.

2

7.     Defendants are liable for their failure to pay Plaintiffs for all work performed, for hours worked in excess of forty (40) per week.

8.     Plaintiffs who elect to participate in this FLSA collective action seek compensation for all hours worked including, but not limited to, pre- and post-shift work performed for Defendants, for all hours worked in excess of forty (40) per week, an equal amount of liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

9.     Plaintiff Phillip Scott ("Plaintiff Scott") also brings this action, on his own behalf, and as a representative of similarly situated current, former laborers or similar positions, employed by Defendants in North Carolina, under the NCWHA.  Plaintiff Scott, who is a North Carolina resident and who worked for Defendants in North Carolina, asserts that he and the putative class, who work or worked in North Carolina for Defendants, are entitled to compensation for all unpaid hours worked, including, but not limited to, pre- and post-shift work performed for Defendants whether the work week totaled greater or fewer than forty (40) hours, compensation at the appropriate straight time rate, overtime rates for all hours worked in excess of forty (40) per week, an equal amount of liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to N.C. Gen. Stat. §§ 95-25.13, 95-25.6, 95-25.22(a), (a1), and (d).

10.     Plaintiffs seek class certification under Rule 23 of the Federal Rules of Civil Procedure for the following class of Defendants' employees in North Carolina:

> All non-exempt employees of J&K Drywall, Inc. d/b/a K&J Construction, Framing, and Hanging; James Malloy, Francis Malloy, Collins & Wright, Inc., and Balfour Beatty Construction, LLC who worked within two (2) years prior to the commencement of this action, through the date of judgment or final disposition of this action.

3

## JURISDICTION AND VENUE

11.    This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the FLSA, 29 U.S.C. § 201, *et seq.*

12.    The United States District Court for the Eastern District of North Carolina has personal jurisdiction because Defendants conduct business throughout North Carolina, including Robeson, Wake, and/or New Hanover counties, which are located within this District.

13.    Venue is proper in this judicial district because all Defendants perform substantial work in this district, because the named Plaintiff resides in Robeson County, North Carolina, and because some of the unlawful acts alleged herein occurred in Robeson County, North Carolina.

14.    The claims for violations of the NCWHA are based upon the statutory law of the State of North Carolina.

15.    Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state claims because they arise out of the same nucleus of operative facts as the FLSA claim.

16.    All of the alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness and convenience for the parties.

## PARTIES

17.    Plaintiff is an adult resident of the state of North Carolina. Plaintiff resides in Lumberton, North Carolina. Plaintiff worked as a "foreman" drywall mechanic for K&J Defendants and worked framing and hanging drywall and sheetrock at Defendant Balfour Beatty's awarded construction project consisting of the McLeod Seacoast Hospital and ER ("McLeod Hospital") located in Little River, South Carolina. His employment on the McLeod Hospital project started on or about August 2015 until October 2018. His scheduled shift was typically from 7:00

a.m. through 5:30 p.m., Monday through Thursday and 7:00 a.m. to 3:00 p.m., Friday and Saturday. He was also scheduled to work approximately every other Sunday from 7:00 a.m. to 3:00 p.m.

18.     Defendant J&K Drywall, Inc. is a North Carolina-based company, which has been in business since 2004 and operates as K&J Construction, Framing, And Hanging.  James Malloy is listed as the registered agent of J&K Drywall, Inc.  Defendant J&K Drywall, Inc. provides drywall services such as: framing, hanging, and installing drywall and sheetrock.

19.     Defendants Frances Malloy and James Malloy are individuals who may be served with process wherever they may be found. During the time relevant to this action, Defendants Malloy were the owners of J&K Construction and held or implemented individual control over the day-to-day activities of K&J Construction Inc.

20.     Defendant Collins & Wright is a South Carolina domestic corporation, registered and in good standing in the State of North Carolina, with its principal place of business at 103 Sunbelt Blvd, Columbia, SC, 29203.  Defendant Collins & Wright provides construction services related to acoustical, drywall, and metal stud systems.  Defendant Collins & Wright can be served through their counsel Zachary L. Weaver with Gallivan, White & Boyd, P.A. at 55 Beattie Place, Suite 1200, Greenville, SC 29601.

21.     Defendant Balfour Beatty Construction, LLC is a Texas incorporated business, registered to do business in the State of North Carolina, with its principal place of business at 3100 McKinnon St., Dallas, Texas, 75201.  Leon Blondin, Glenn S. Burns, and Eric Stenman are listed as managers of the company with the North Carolina Secretary of State.  Defendant Balfour Beatty provides preconstruction services, general contracting, and comprehensive construction management.  Defendant Balfour Beatty can be served at their principal place of business.

5

22. As stated, Defendant Balfour Beatty was awarded the construction project of McLeod Hospital, who then contracted Defendant Collins & Wright, who subcontracted with K&J Defendants, to construct the McLeod Hospital, in Little River, South Carolina.

23. Upon information an belief, during the time relevant to this action, each Defendant was an employer, joint employer, or member of an integrated, common enterprise, that employed Plaintiff and putative plaintiffs/class members, pursuant to the federal and state statutes, hereunder, in that each Defendant, or its agents, held or implemented the power, *inter alia*, to control the work performance of Plaintiff and putative plaintiffs/class members by assigning tasks to Plaintiffs, opt-in, and putative plaintiffs, and each Defendant received the benefit of Plaintiffs' labor.

## COVERAGE

24. At all relevant times, Defendants were employers within the meaning of the FLSA, 29 U.S.C. § 203(d), the NCWHA, N.C. Gen. Stat. § 95-25.2(5).

25. At all relevant times, Defendants acted as joint employers with respect to the work of the Plaintiffs, as defined in *Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125 (4th Cir. 2017) and as set forth below at ¶¶ 43 to 64.

26. At all relevant times, all Defendants have been employers as defined by Section 3(d) of 29 U.S.C. § 203(d) of the FLSA.

27. At all relevant times, all Defendants operated as an enterprise engaged in related activities performed through a unified operation or common control for a common business purpose as defined by Section 3(r) of 29 U.S.C. § 203(r)(1) of the FLSA.

28. At all relevant times, all Defendants jointly and severally, were joint employers pursuant to 29 CFR 791.2 by the FLSA.

6

29.     At all relevant times, all Defendants have had gross operating revenues in excess of $500,000, consistent with 29 U.S.C. § 203(s)(1)(A)(ii).

30.     At all relevant times, Plaintiffs were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § §206-207.

## FACTUAL ALLEGATIONS

31.     Plaintiff is a resident of Robeson County, North Carolina, and worked for all Defendants, either separately or jointly, on the McLeod Hospital project from January 2016 to October 2018.

32.     All Defendants had a common practice of classifying Drywall Mechanics/Finishers as independent contractors and compensating Drywall Mechanics/Finishers based on an hourly rate for work performed.   Defendant J&K set all hourly wages for Drywall Mechanics/Finishers. Plaintiff's promised hourly rate of pay was $17.00/hour.

33.     All Plaintiffs' job duties included framing, hanging, and installing drywall and sheetrock, maintaining a logbook tracking work performed, and attending safety and project meetings, as instructed by Defendants Balfour Beatty and Collins & Wright.

34.     During the hospital's construction, Plaintiff Scott acted as a "foreman" drywall mechanic.  As one of the lead drywall mechanics/finishers for K&J Defendants, Plaintiff was tasked with driving all employees from Lumberton, NC, to the construction site in Little River, SC. Plaintiff Scott did not have any authority over the hiring and firing of other employees, nor could he effectively recommend the hiring, firing, advancement, promotion, or other change of status of other employees.

7

35.	Upon arriving at the jobsite, all Plaintiffs reported to either Defendants Balfour Beatty and/or Collins and Wright foremen/supervisors. Plaintiffs took orders and direction from these Defendants' foremen on a daily basis.

36.	Though all Defendants paid Plaintiffs based on the number of hours worked at the jobsite, which they determined from the timesheets Plaintiffs were required to fill out, Defendants would often "short" Plaintiffs, or fail to pay employees for all time worked and would not compensate employees their promised hourly rate for hours worked up to forty (40) in a week and/or at a rate of time and one half for hours worked over forty (40) in a week. Plaintiffs understood their promised premium overtime rate was 1.5 their promised hourly rate, and when they complained to Balfour Beatty's and Collins and Wright foremen, about their unpaid overtime wages, their response affirmed their understanding of the promised rates, as they advised Plaintiffs that their money had been given to the K&J Defendants.

37.	As the construction project was located out of state, Plaintiffs were required to travel to and from Little River, SC. K&J Defendants coordinated the transportation of Plaintiffs, requiring the employees report to Dobb's Place in Lumberton, NC, by 5:00 a.m. and providing two K&J Construction vans and fuel to shuttle Plaintiffs to and from the worksite. Plaintiffs travelled approximately one and a half hours each way from K&J Defendants' designated meet-up spot and McLeod Hospital. In other words, this added another 3 hours per day to their workday.

38.	Once at the construction site, Plaintiffs worked from approximately 7:00 a.m. until approximately 5:30 p.m., from Monday through Thursday. On Fridays and Saturdays, Plaintiffs worked on the construction site from approximately 7:00 a.m. until approximately 3:00 p.m. Plaintiffs worked an additional 7:00 a.m. to 3:00 p.m. shift approximately two (2) Sundays a month. Approximately one week per month, Plaintiffs were required to work double shifts from Tuesday

8

to Thursday. On days where all Defendants scheduled Plaintiffs to work double shifts, Plaintiffs worked from 7:00 a.m. until 5:00 p.m. at the construction site and would return to the construction site to continue working from 7:00 p.m. to 3:00 a.m. As such, Plaintiffs worked approximately 80-88 hours per week, two (2) weeks a month, and another two (2) weeks a month worked at least 70 hours per week, on a regular basis.

39. Drywall Mechanics/Finishers worked the same schedule, always in excess of forty-hours a week. Every week, Drywall Mechanics/Finishers worked anywhere from seventy (70) hours to eighty-eight (88) hours a week.

40. For each day of travel during the relevant period of employment, Plaintiff was not paid $76.50 per shift for time spent travelling to and from the construction site. In the aggregate, Plaintiff was not paid a minimum of $21,318.00 for pre- and post-shift travel time.

41. Additionally, because Plaintiffs were only paid straight-time for hours over 40 per week, they are due the additional half-time. For example, from the beginning of the McLeod Hospital project (August 2015) until July 2018, Defendants compensated Plaintiff Scott at his regular rate, $17.00 per hour, for all hours worked. Plaintiff is owed half-time compensation, $8.50 per hour, for all overtime hours worked during this relevant time period. As such, including the unpaid hours for pre- and post-shift travel time and additional half-time for hours over 40 per week, Plaintiff Scott is due a minimum of approximately $48,331.00.

## SINGLE ENTERPRISE AND JOINT EMPLOYMENT ALLEGATIONS

42. Upon information and belief, all four Defendants jointly and severally employ Plaintiffs to provide construction services to customers and contractors.

43. During the time relevant to this action, Plaintiffs worked exclusively on a project managed by Defendant Balfour Beatty, under contract with Defendant Collins & Wright and K&J

9

Defendants, and under the regular or daily supervision of managers of all Defendants. From the meet-up point in Lumberton, NC, and after starting work for the day, Plaintiffs would travel to the jobsite in K&J Defendants' vehicles.

44.     At the construction site, supervisors from only Defendant Balfour Beatty and Defendant Collins & Wright were present on a daily basis. Defendants' Balfour Beatty and Collins & Wright supervisors monitored Plaintiffs' work, gave orders to Plaintiffs, tracked daily time sheets, and responded to any issues related to Plaintiffs' work as necessary.

45.     K&J Defendants rarely visited the construction site.

46.     Before Plaintiffs were allowed to perform any work on the McLeod Hospital project, Defendant Balfour Beatty required Plaintiffs to receive a flu shot.

47.     Every morning, upon arriving at the construction site, Plaintiffs reported to Defendant Collins & Wright's Field Superintendent, Michael Roscoe.

48.     Defendants' supervisors or foremen, employed by Defendant Balfour Beatty and Collins & Wright, would instruct Plaintiffs each day and directed each group regarding what areas needed to be worked on the next day. Defendants Balfour Beatty and Collins & Wright would supervise the work each group performed, ensuring the work complied with Defendants' Balfour Beatty and Collins & Wright safety requirements and met Defendants' standards.

49.     Twice a week, Plaintiffs attended mandatory safety meetings, organized by Defendants Balfour Beatty and Collins & Wright. Defendants maintained an attendance log of workers who attended these meetings.

50.     Defendants Balfour Beatty and Collins & Wright required Plaintiffs to maintain a daily logbook, tracking what project they completed and whether or not it was safe, and had to turn in this daily report to Defendants' Collins & Wright Superintendent.

51.     Plaintiffs worked the same exact schedule, as determined necessary and assigned by the onsite supervisors employed by Defendants Balfour Beatty and Collins & Wright, including day-of determinations on whether Plaintiffs would need to work a double shift.

52.     On days where Plaintiffs worked double shifts, Defendant Collins & Wright provided the workers with hotel rooms to rest between shifts.

53.     Defendant Collins & Wright's Superintendent, Michael Roscoe, maintained timesheets for Plaintiffs, tracking the hours spent working on the construction site.  Plaintiffs' timesheets only included hours of work for work performed at the jobsite.  Such records do not include Plaintiffs pre- and post-shift travel time to and from K&J Defendants' designated meet-up spot and the construction site, which is part of the continuous workday.

54.     Based upon information and belief, in preparation of pay day every Friday, Defendants Balfour Beatty and Collins & Wright calculated wages for Plaintiff and putative plaintiffs and/or class members each week, using timesheets maintained by their respective site supervisors/foremen.  After summing the total weekly wages for the crew, Defendants Balfour Beatty and Collins & Right would transfer the money to K&J Defendants, who were responsible for meeting Plaintiff and putative plaintiffs and/or class members at a bank in Lumberton, NC, each Friday to pass out paychecks.

55.     Defendants Balfour Beatty and Collins & Wright, being fully aware of Plaintiffs' work hours, did not act to ensure that their subcontractor was paying their shared employees in compliance with the law, especially in light of the fact that Defendants' Balfour Beatty or Collins & Wright superintendents or foremen were Plaintiffs' sole supervisors at the construction site and Plaintiffs repeatedly complained to the superintendents or foremen about improper pay.

11

56.     While on the construction site, Plaintiffs were required to wear Collins & Wright badges, personalized with the worker's photo, name, and employee identification number, as well as place Balfour Beatty stickers on their hard hats, tracking and confirming attendance at Defendant Balfour Beatty's safety meetings.

57.     Plaintiffs were provided logo t-shirts from Defendants K&J and Collins & Wright.

58.     Defendant Collins & Wright provided equipment, including, but not limited to, heavy tools such as scaffolding, ram sets, chop saws, pin guns, and hammer drills, as well as all building materials necessary to complete the McLeod Hospital project.

59.     Defendants' Balfour Beatty and Collins & Wrights superintendents/foremen had the ability to hire and fire Plaintiffs.

60.     Plaintiffs never employed other workers.

61.     Throughout the relevant time period, Plaintiffs worked exclusively for Defendants.

62.     All of the Defendants' wrongful acts described above were intentional and willful and were not the result of any dispute.

63.     Each wrongful act alleged in this Complaint was undertaken by each of the Defendants either directly or through their agents, who had actual or apparent authority to undertake such acts.

64.     Plaintiffs were aware of other similarly situated persons who were subjected to the same unlawful wage and hour practices by all Defendants during the relevant period of time.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

65.     Pursuant to 29 U.S.C. § 216(b), Named Plaintiff Scott brings this action on behalf of himself and putative plaintiffs.

66.     Putative plaintiffs have been subject to the same unlawful practices alleged herein, and therefore, are similarly situated to Plaintiff named in this Complaint.  Putative plaintiffs, like named Plaintiff, worked for all Defendants as Drywall Mechanics/Finishers framing, hanging, and installing drywall and sheetrock.  These putative plaintiffs, like Plaintiff, were required to work more than forty (40) hours each workweek without being paid at the legally required overtime rate of time and one-half their regular rates of pay.  Putative plaintiffs, and Plaintiff, therefore, should be permitted to pursue their claims collectively, pursuant to 29 U.S.C. § 216(b).

67.     Pursuit of this action collectively will provide the most efficient mechanism for adjudicating the claims of Plaintiff and putative plaintiffs of the proposed class.

68.     Named Plaintiff Scott requests that he be permitted to serve as a representative of those who consent to participate in this action and that this action be granted collective action status pursuant to 29 U.S.C. § 216(b).

## NCWHA ALLEGATIONS
## NCWHA CLASS ACTION ALLEGATIONS

69.     Pursuit of this action collectively will provide the most efficient mechanism for adjudicating the claims of Plaintiff and putative class members.

70.     Pursuant to Rule 23(b) and 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff, brings his second claim for relief to redress and remedy all Defendants' violations of the NCWHA, N.C. Gen. Stat. § 95-25.1, *et seq*., on behalf of himself and putative class members.

71.     Plaintiff and putative class members assert that all Defendants violated the NCWHA by failing to pay their employees regular, promised, and overtime wages of one and one-half times their regular or promised rate of pay, which is part of the employees' accrued, earned, and promised

13

wages and should have been paid when due, on the employees' regular payday; this requirement is not covered by the overtime provisions of the FLSA. *See* N.C. Gen. Stat. §§ 95-25.13 and 95-25.6.

72.     The Proposed Class:  Named Plaintiff proposes the same class for purposes of certification under Rule 23 as under § 216(b) of the FLSA.  The proposed class is easily ascertainable.  The number and identity of NCWHA class members are determinable from a list of all Defendants' employees and any other payroll records.

73.     Numerosity:  The proposed class is so numerous that the joinder of all such persons is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. While the exact number of class members is unknown to Plaintiffs at this time, upon information and belief, the class comprises of at least thirty (30) persons.

74.     Common Questions Predominate: There is a well-defined commonality of interest in the questions of law and fact involving and affecting the proposed class in that named Plaintiff and all putative class members have been harmed by all Defendants' failure to pay earned wages. The common questions of law and fact include, but are not limited to the following:

    a.  Whether all Defendants failed to pay Plaintiff and putative class members for all of their hours worked;

    b.  Whether all Defendants refused to pay named Plaintiff and putative class members their regular and/or promised rate for hours worked up to forty (40) per week and for overtime wages based on their promised or regular rate for all hours worked over forty (40) per week on their regular payday as part of their earned and accrued wages in violation of NCWHA §§ 95-25.13 and 95-25.6;

    c.  Whether all Defendants' refusal to pay such compensation is in violation of the NCWHA; and

14

d.   Whether all Defendants' refusal to pay for pre- and post-shift travel time constitutes a violation pursuant to NCWHA and N.C. Gen. Stat. §§ 95-25.13 and 95-25.6.

75.   <u>Typicality</u>: The claims of named Plaintiff herein are typical of those claims that could be alleged by a putative class member, and the relief sought is typical of the relief which would be sought by each member of the class in separate actions.  All class members were subject to the same compensation practices of all Defendants, as alleged herein, of refusing to pay all earned and accrued wages on the regular payday of putative class members.  All of Defendants' compensation policies and practices affected all putative class members similarly, and all Defendants benefitted from the same type of unfair and/or wrongful acts as to each putative class member.  Plaintiff and putative class members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

76.   <u>Adequacy of Representation</u>: Plaintiff is able to fairly and adequately protect the interests of putative class members, and there are no known conflicts of interest between Plaintiff and putative class members.  Plaintiff has retained counsel who is experienced and competent in both wage and hour law and complex class action litigation.

77.   <u>Superiority</u>: A class action is superior to other available means for the fair and efficient adjudication of this controversy.  Individual joinder of all class members is impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender.  Because the losses, injuries and damages suffered by each of the individual class members are small in the sense pertinent to the class action analysis, the expenses and burden of individual litigation would make

it extremely difficult or impossible for the individual class members to redress the wrongs done to them.

On the other hand, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantial and substantially more than if the claims are treated as a class action. Prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the class, establishing incompatible standards of conduct for all Defendants and resulting in the impairment of class members' rights and the disposition of their interests though actions to which they were not parties. The issue in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

78. <u>Public Policy Considerations</u>: All Defendants violate the NCWHA. Like current employees are often afraid to assert their rights out of fear of direct or indirect retaliation, former employees may also be fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity that allows for vindication of their rights while eliminating or reducing these risks.

**<u>COUNT I</u>**
**<u>FLSA –FAILURE TO PAY OVERTIME</u>**
**(ALL DEFENDANTS)**

79. Plaintiff and putative plaintiffs incorporate paragraphs 1-77 as set forth above, and state that all Defendants' actions complained of herein constitute a violation of 29 U.S.C. § 207, *et seq.* of the FLSA because all Defendants—at all times during Plaintiff and opt-in and  putative

16

plaintiffs' employment—failed and otherwise refused to compensate Plaintiff and putative plaintiffs, for hours worked in excess of forty hours in a workweek at a rate of not less than one and one-half (1 ½) times their hourly rate per hour.

80. Plaintiff and members of the proposed class are or were employed or jointly employed by all Defendants as allegedly hourly-paid individuals to perform manual labor and/or other duties that do not satisfy the tests for exempt positions under the FLSA.

81. All Defendants have willfully failed to pay Plaintiff and members of the proposed class at one and one-half times their regular rate for all hours worked in excess of forty (40) hours per week, in violation of the FLSA.

82. As a result of all Defendants' willful failure to pay Plaintiff and members of the proposed class as required by law, all Defendants owe Plaintiff and members of the proposed class overtime wages as well as liquidated damages in an amount equal to the amount of unpaid wages.

83. All Defendants have willfully engaged in such conduct in violation of the FLSA by engaging in a pattern or practice of permitting or requiring Plaintiff, and those similarly situated, to work without compensation at the applicable overtime rate for all hours worked over forty (40) per week.

84. Plaintiff and putative plaintiffs each worked more than forty (40) hours in one or more workweeks within the applicable statutory period.

85. The foregoing conduct, as alleged above, constitutes willful violations of the FLSA within the meaning of 29 U.S.C. § 255(a).

86. As set forth above, Plaintiff and putative plaintiffs have sustained losses in their compensation, a proximate result of all of Defendants' violations. Accordingly, named Plaintiff, on behalf of himself and putative plaintiffs, seeks damages in the amount of their respective unpaid

overtime compensation and liquidated damages, as provided by the FLSA, 29 U.S.C. § 216(b); and such other legal and equitable relief as the Court deems just and proper.

87. Plaintiff, on behalf of himself and putative plaintiffs, seeks recovery of his attorneys' fees and costs to be paid by all Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

## THE THREE-YEAR STATUTE OF LIMITATIONS SHOULD APPLY TO THIS CASE BECAUSE THE NON-PAYMENT OF OVERTIME IN VIOLATION OF 29 U.S.C. § 207(a)(1) WAS WILLFUL
### (ALL DEFENDANTS)

88. Plaintiff incorporates paragraphs 1-86 as set forth above, and states that that the three-year provision of 29 U.S.C. § 255(a) should apply in this case because the violation of 29 U.S.C. § 207(a)(1) was willful. All Defendants required Plaintiff and all those similarly situated to work substantial hours in excess of forty (40) per week. When Plaintiff asked about his overtime compensation for hours worked in excess of forty (40) per week, Defendant Malloy acknowledged, as advised by his accountant, the premium overtime rate should apply and changed his method of compensation. However, rather than compensating Plaintiff at his hourly rate for hours worked up to forty (40) in a week and one and one-half times his hourly rate for hours over forty (40) worked in a week, Defendant Malloy reduced Plaintiff's hourly rate in order to "back into" an overtime rate of one and one-half times Plaintiff's hourly rate. In other words, Defendants paid less than the promised hourly rate for hours worked less than forty (40) hours per week. Upon information and belief, all Defendants were aware that Plaintiff and putative plaintiffs were not receiving all of their overtime wages for hours worked in excess of forty (40) per week.

89. Plaintiff and putative plaintiffs complained to superintendents of all Defendants about their unlawful pay practices, and Defendants' practices have been the subject of at least one investigation by the United States Department of Labor ("USDOL").

90.     The USDOL's investigative period was from June 26, 2016, to June 24, 2018.  The USDOL's findings revealed that Defendants did not comply with the overtime pay provisions or recordkeeping requirements of the FLSA. *See* Exhibit A, USDOL Investigation Narrative Report.

## COUNT II
## VIOLATIONS PURSUANT TO THE NORTH CAROLINA WAGE AND HOUR ACT FOR FAILURE TO PAY ALL EARNED AND ACCRUED WAGES ON EMPLOYEES' REGULAR PAY DAY

91.     Plaintiff incorporates by reference all preceding paragraphs as if the same were set forth again fully at this point.

92.     The class period for this cause of action is at least two years from the date of the filing of this Complaint.

93.     It is unlawful under North Carolina law for an employer to "suffer or permit" an employee to work without paying promised and earned wages for all hours worked in violation of N.C. Gen. Stat. § 95-25.6.

94.     Additionally, North Carolina law requires every employer to notify employees of the promised wages and the day of payment as well as making available a written version of the employment practices and policies regarding promised wages. *See* N.C. Gen. Stat. § 95-25.13(1)-(2).

95.     Pursuant to the NCWHA, N.C. Gen. Stat. §§ 95-25.13 and 95-25.6, all Defendants were required to pay Plaintiff and putative class members all wages, when due, for all promised earned and accrued regular, straight, and overtime wages of one and one-half times the promised wage rate, which is a part of all the employees' accrued and earned wages, and which should have been paid when due on the employees' regular payday; this requirement is not covered by the overtime provision under the FLSA.

19

96.     All Defendants intentionally refused to pay all wages due as set forth in the preceding paragraphs of this Complaint to Plaintiff and putative class members in violation of the NCWHA.

97.     When Plaintiff and putative class members would complain to Defendants Balfour Beatty and Collins & Wright foremen about not receiving compensation at the expected rate of one- and one-half times their regular hourly rate for overtime hours worked, the Foremen did not deny the promised wages were owed but rather shifted responsibility of payment to Defendant Malloy, despite Defendants Balfour Beatty and Collins & Wright active role in calculating hours worked and wages owed.

98.     Rather than compensating Plaintiff at his promised hourly rate for hours worked up to forty (40) in a week and one and one-half times his hourly rate for hours over forty (40) worked in a week, Defendants reduced Plaintiff's hourly rate in order to "back into" an overtime rate of one and one-half times Plaintiff's hourly rate.

99.     Upon information and belief, all Defendants were aware that Plaintiff and putative plaintiffs were not receiving all straight-time wages and overtime wages for hours worked in excess of forty (40) per week pursuant to the promised straight-time rate and corresponding premium overtime rate.

100.    From August 2018 until October 2018, after the United States Department of Labor – Wage and Hour Division ("USDOL – WHD") initiated an investigation, Defendants began compensating Plaintiffs at the correct premium overtime rate, one- and one-half times their regular hourly rate, for all overtime hours worked but simultaneously began reducing Plaintiffs' regular hourly rate to various amounts each week.  During this time period, Plaintiff was not paid his regular

rate for all hours up to forty (40) each week. As an example, for these unpaid hours, Plaintiff Scott alone is due at least $68 per week, for weeks between August 10, 2018 to September 7, 2018.

101.    The foregoing conduct, as alleged, constitutes willful violations of the NCWHA, N.C. Gen. Stat. §§ 95-25.13 and 95-25.6.

102.    As set forth above, Plaintiff and members of the proposed class have sustained losses and lost compensation as a proximate result of all of Defendants' violations. Accordingly, Plaintiff, on behalf of himself and all those similarly situated, seeks damages in the amount of their unpaid earned compensation, liquidated damages, plus interest at the legal rate set for in N.C. Gen. Stat. § 95-25.22(a) and (a)(1).

103.    Plaintiff, on behalf of himself and all those similarly situated, seeks recovery of his attorney's fees as provided by the NCWHA, N.C. Gen. Stat. § 95-25.22(d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all those similarly situated, prays that this Honorable Court:

1.    Issue an Order certifying this action as a collective action under the FLSA and designate the above Plaintiff as a representative of all those similarly situated under the FLSA collective action;

2.    Issue an Order certifying this action as a class action under the NCWHA and designate the above Plaintiff as a representative on behalf of all those similarly situated of the NCWHA classes;

3.    Award Plaintiff and all those similarly situated actual damages for unpaid wages and liquidated damages equal in amount to the unpaid compensation found due to Plaintiffs and the

21

class as provided by the NCWHA, N.C. Gen. Stat. § 95-25.22(al) and pursuant to the FLSA, U.S.C. § 216(b);

4.    Award Plaintiff and all those similarly situated their attorneys' fees, costs, and disbursements as provided by the NCWHA, N.C. Gen. Stat. § 95-25.22(d) and pursuant to the FLSA, 29 U.S.C. § 216(b);

5.    Award Plaintiff and all those similarly situated pre- and post-judgment interest at the statutory rate as provided by the NCWHA, N.C. Gen. Stat. § 95-25.22(a) and pursuant to the FLSA, 29 U.S.C. § 216(b); and

6.    Grant Plaintiff and all those similarly situated any additional relief that the Court deems appropriate and just.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this June 13, 2019.

/s/*Gilda Adriana Hernandez*
Gilda A. Hernandez, (NCSB No. 36812)
Charlotte Smith (NCSB No. 53616)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
1020 Southhill Drive, Suite 130
Cary, NC 27513
Tel: (919) 741-8693
Fax: (919) 869-1853
ghernandez@gildahernandezlaw.com
csmith@gildahernandezlaw.com

*Attorneys for Plaintiffs*