# EXHIBIT 4

## DECLARATION OF GILDA A. HERNANDEZ

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

PHILLIP SCOTT, on behalf of himself and all others similarly situated,
    *Plaintiff*,

v.

J&K DRYWALL, INC. d/b/a K&J CONSTRUCTION, FRAMING, AND HANGING; JAMES MALLOY; FRANCES MALLOY; COLLINS & WRIGHT, INC.; and BALFOUR BEATTY CONSTRUCTION, LLC,
    *Defendants*

CA No. 7:19-CV-00108-FL

## DECLARATION OF GILDA ADRIANA HERNANDEZ IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT

I, Gilda Adriana Hernandez, declare as follows:

1. I am an attorney in good standing, duly licensed and admitted to the North Carolina Bar. I am an attorney with the Law Offices of Gilda A. Hernandez, PLLC ("GAH"). The testimony set forth in this Declaration is based on first-hand knowledge, about which I could and would testify competently in open Court if called upon to do so, and on records contemporaneously generated and kept by my Firm in the ordinary course of its law practice.

2. I provide this Declaration for the purpose of setting forth the background to describe the work completed by my firm in this action, our rates, and expenses incurred in the course of this litigation, and to address the following factors: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense, and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of counsel; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential

recovery.

## GAH's Background

3. I graduated from the University of Illinois, Chicago with a B.A. in Criminal Justice and received my Juris Doctor degree from Southwestern University School of Law, Los Angeles, California.

4. In 1997, I started my wage and hour career. I worked as a United States Department of Labor, Wage and Hour ("USDOL-WHD") official, enforcing and administering wage and hour laws pursuant to the Fair Labor Standards Act ("FLSA"), Family Medical Leave Act ("FMLA"), Davis Bacon Act ("DBA"), and Service Contracts Act ("SCA"). I investigated employers to determine their compliance with all relevant wage and hour laws, regarding overtime, minimum wage, prevailing wages, child labor, misclassification of salaried employees, and H-1(B) issues, in addition to, providing employers with guidance on achieving and maintaining compliance.

5. In 2003, I interned with the United States Department of Labor – Solicitor of Labor, where I conducted legal research on relevant wage and hour laws and advised Regional Solicitors of Labor on whether cases were suitable for wage and hour litigation.

6. Since 2008, I have worked in private practice, representing employees exclusively in individual and collective/class action litigation for alleged violations of the FLSA and relevant state wage and hour laws. Since that time, I have represented thousands of workers and recovered millions of dollars in both nationwide and local actions. In 2011, I tried the first of its kind, a NCWHA wage and hour class action in Mecklenburg County, obtaining a verdict on behalf of a class of janitorial workers, resulting in actual and liquidated damages, pre-judgement interest, and attorneys' fees and costs.

7. GAH are the attorneys for Plaintiffs. Our firm represents plaintiffs in a wide variety

of employment matters, including individual, collective, and class action litigation involving wage and hour matters.

8. GAH have substantial experience in prosecuting and settling wage and hour collective/class actions and are well-versed in wage and hour law and FLSA collective actions.

9. Given my substantial experience in prosecuting wage and hour class and collective actions, I have regularly been appointed class counsel in such matters. *See Kincaid v. Courier Express/Charlotte Inc., et al*, No. 1:18-cv-707-AT (N.D. Ga Jan. 31, 2019) (conditionally finding plaintiff's counsel "are adequate to serve as [c]lass [c]ounsel" and appointing GAH as class counsel for the settlement classes – approximately 1500 couriers affected); *Berber v. Hutchison Tree Serv.*, No. 5:15-CV-143-D, 2018 WL 3869980, at *2 (E.D.N.C. Aug. 14, 2018) (appointed class counsel in conditional/class certification action; affecting over 120 individuals); *Velasquez-Monterrosa v. Mi Casita Rests.,* No. 5:14-CV-448-BO, 2016 U.S. Dist. LEXIS 56089 (E.D.N.C. Sept. 26, 2017) (collective/class action affecting over 200 individuals; settlement approved for $2.5 million); *Alfaro Zelaya v. A+ Tires, Brakes, Lubes, & Mufflers, Inc*., No. 5:13CV810-F, 2015 U.S. Dist. LEXIS 1320225 (E.D.N.C. Sep. 28, 2015) ("named plaintiffs are also represented by competent and qualified counsel. Counsel has extensive experience litigating similar matters, including other wage and hour suits in North Carolina") (affecting over 200 workers); *Tomkins v. Amedisys, Inc.,* No. 3:12-cv-1082 (WWE), 2014 U.S. Dist. LEXIS 3660 (D. Conn. Jan. 13, 2014) (represented over 2500 clinicians in a nationwide action involving in excess of 35 states; settlement approved for $8 million in 2016); *Rindfleisch v. Gentiva Health Services, Inc.,* No. 1:10-cv-3288-SCJ, 2011 U.S. Dist. LEXIS 57949 (N.D. Ga. Apr. 13, 2011) (represented initially over 1,000 clinicians in a nationwide collective action in over thirty states; settlement approved for $3.3 million in 2017); *McLaurin v. Prestage Foods Inc.,* 271 F.R.D. 465, 479 (E.D.N.C. 2010)

("the court finds that plaintiffs' counsel possess the necessary qualifications….Gilda A. Hernandez shall serve as counsel for the class") (affecting approximately 1,800 Class Members); *see also Mitchell v. Smithfield Packing Co.*, 2011 U.S. Dist. LEXIS 108974, *10 (E.D.N.C. 2011)[1] ("….Gilda Hernandez [who is a] capable trial counsel with substantial experience in complex civil litigation, including class action lawsuits"); *Horne v. Smithfield Packing Co.*, 2011 U.S. Dist. LEXIS 108978, *10 (E.D.N.C. 2011) ("The court finds that Ms. Hernandez ….will fairly and adequately represent the interests of the class"); *Romero v. Mountaire Farms Inc.*, 796 F. Supp. 2d 700, 715 (E.D.N.C. 2011) ("the court finds that plaintiffs' counsel possess the necessary qualifications") (affecting approximately 10,000 poultry processing employees); *Guerrero et al v. Pro Klean, Inc.*, CA No. 09 CVS 29529 (Mecklenburg County, Superior Ct. 2012) ("Ms. Hernandez has specialized experience in the field of wage and hour law.").

10.     I have also been involved in many educational and legal groups, including the American Bar Association, National Employment Lawyers Association, the National Employment Law Project, the North Carolina Advocates for Justice, and the North Carolina Bar Association, for which I have authored articles relating to FLSA and NCWHA requirements. Additionally, I have lectured on various FLSA and NCWHA topics, including collective/class action litigation at meetings, conferences, and CLE programs sponsored by the National Employment Lawyers Association, the North Carolina Bar Association, and the North Carolina Advocates for Justice.

### ***Plaintiff's Initial Investigation of Potential Claims***

11.     Prior to and following the filing of Named Plaintiff's Complaint, Plaintiffs' counsel conducted in-depth interviews with each of the named and opt-in Plaintiffs, for a total of about seven (7) Plaintiffs, to determine the hours that they individually worked, the number of hours that

---

[1] Smithfield cases collectively affected approximately 3,500 Class Members.

they worked for which they were not paid, their rate of pay, approximately how many hours they worked per day and/or per week, and other information relevant to their claims and those of other putative plaintiffs, to compute damage calculations. Through the Freedom of Information Act, ("FOIA"), Plaintiffs' counsel also contacted the United States Department of Labor ("USDOL") to determine the nature of their investigative findings, which led to obtaining and reviewing a substantial number of documents, including, but not limited to, payroll records, investigative reports, and statements from various sources.

### *The Litigation, Extent of Discovery, and Settlement Negotiations*

12. On June 13, 2019, Phillip Scott filed a complaint in the U.S. District Court for the Eastern District of North Carolina. Plaintiff Scott brought this action individually and as a collective/class action for unpaid wages, unpaid overtime compensation, liquidated damages, and all related penalties and damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*. and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, *et seq*. Plaintiff Scott alleged that Defendants had a systemic company-wide policy, pattern, or practice of misclassifying their employees as independent contractors, willfully failing to compensate employees for all hours worked, willfully failing to compensate employees at the appropriate overtime rate for overtime hours worked, and violating statutory record-keeping provisions. *See* Dkt. No. 1.

13. On or about July 15, 2019, Plaintiff effected service of process on Defendants Collins & Wright, Inc and Balfour Beatty Construction, LLC. *See* Dkt. No. 9 ¶¶ 2-3. On or about July 16, 2019, Plaintiff effected service on Defendants J&K Drywall, Inc., James Malloy, and Frances Malloy. *See* Dkt. No. 9 ¶ 1.

14. Plaintiffs assert that all Defendants are joint employers of Plaintiffs. *See* Dkt. No. 1, ¶ 25.

15. On these grounds, named Plaintiff sought to recover on his behalf, as well as on behalf of those similarly situated, unpaid wages, overtime pay, liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs.

16. On July 28, 2019, Defendant Collins & Wright, Inc filed a Motion for Extension of Time, after conferring with counsel for the Plaintiffs, requesting a twenty-one (21) day extension, up to and including August 26, 2019, to answer, respond, or otherwise respond to Plaintiff's Complaint. *See* Dkt. No. 7. On July 29, 2019 the Court granted Defendant Collins & Wright, Inc's requested extension. *See* July 29, 2019 Text Order.

17. On August 2, 2019, Defendants J&K Drywall, Inc., James Malloy, and Francis Malloy, filed their first Consent Motion for Extension of Time, requesting an additional twenty-one days, up to and including August 26, 2019, to answer, respond, or otherwise respond to Plaintiff's Complaint. *See* Dkt. No. 11. On August 5, 2019, the Court granted Defendants J&K Drywall, Inc., James Malloy, and Francis Malloy's requested extension. *See* August 5, 2019 Text Order.

18. On August 5, 2019, Defendant Balfour Beatty Construction, LLC filed its first Consent Motion for Extension of Time, requesting an additional twenty-one days, up to and including August 27, 2019, to answer, respond, or otherwise respond to Plaintiff's Complaint. *See* Dkt. No. 13. On August 7, 2019, the Court granted Defendant Balfour Beatty Construction, LLC's requested extension. *See* August 7, 2019 Text Order.

19. On August 23, 2019, Defendant Balfour Beatty Construction, LLC filed its second Consent Motion for Extension of Time, requesting an additional ten days, up to and including

September 5, 2019, to answer, respond, or otherwise respond to Plaintiff's Complaint. *See* Dkt. No. 14. On August 26, 2019, the Court granted Defendant Balfour Beatty Construction, LLC's requested extension. *See* August 26, 2019 Text Order.

20. On August 26, 2019, Defendants J&K Drywall, Inc., James Malloy, and Francis Malloy, filed their second Consent Motion for Extension of Time, requesting an additional ten days, up to and including September 5, 2019, to answer, respond, or otherwise respond to Plaintiff's Complaint. *See* Dkt. No. 15. On August 27, 2019, the Court granted Defendants J&K Drywall, Inc., James Malloy, and Francis Malloy's requested extension. *See* August 27, 2019 Text Order.

21. On September 4, 2019, Defendant Balfour Beatty Construction, LLC filed its third Consent Motion for Extension of Time, requesting an additional two days, up to and including September 9, 2019, to answer, respond, or otherwise respond to Plaintiff's Complaint. *See* Dkt. No. 18. On September 9, 2019, the Court granted Defendant Balfour Beatty Construction, LLC's requested extension. *See* September 9, 2019 Text Order.

22. On August 26, 2019, Defendant Collins & Wright, Inc. filed its Answer. *See* Dkt. No. 16.

23. On August September 5, 2019, Defendants J&K Drywall, Inc., James Malloy, and Francis Malloy, Inc. filed their Answer. *See* Dkt. No. 19.

24. On August September 9, 2019, Defendant Balfour Beatty Construction, LLC filed its Answer. *See* Dkt. No. 22.

25. On October 16, 2019, the Parties executed a formal mediation agreement and filed a Joint Motion to Stay Litigation, up to and including, January 3, 2020, to permit the parties to participate in non-binding mediation. During this time, the parties agreed that the assistance of a

7

mediator could be more effective in reaching a resolution in this matter. As such, the parties retained Kenneth Carlson and scheduled mediation on November 12, 2019. *See* Dkt. No. 24. On October 24, 2019, the Court granted the requested stay. *See* Dkt. No. 26.

26. In anticipation of the Parties' November 12, 2019, mediation, the Parties agreed to engage in informal discovery and Plaintiffs were given a deadline to provide a settlement demand for a potentially fruitful mediation. In advance of the mediation, Defendants produced hundreds of payroll documents and timesheets. Similarly, Plaintiffs produced copies of their own check stubs and relevant timesheets. Plaintiffs' counsel engaged in damage calculations, communicated with named plaintiff regarding mediation and all relevant claims; conducted extensive legal research regarding the misclassification of Plaintiffs as independent contractors, unpaid promised wages, including overtime, joint employment theory of liability against all Defendants; and drafted a demand letter for Defendants and a mediation statement for Kenneth Carlson.

27. On November 12, 2019, the Parties had an approximately 10-hour mediation, which ended at nearly 7:30 p.m. With the assistance of the mediator, Mr. Carlson, and the participation of counsel for the Parties, Named and opt-in Plaintiffs Phillip Scott, Donald Barley, Anthony Dial, Timmy Hunt, Justin Jones, Alex Locklear, and James Locklear, respectively, the Parties engaged in a productive mediation and despite numerous challenges, the Parties were able to resolve the matter.

28. On November 12, 2018, following an exchange and review of extensive documentation and several weeks of settlement negotiations and mediation, the parties reached a mutually agreeable settlement of the Litigation, and jointly advised the Court that the parties had reached a settlement agreement to resolve named and opt in Plaintiffs' claims under the FLSA and pursuant to the NCWHA. The court subsequently submitted an order dismissing this case, directing

the Parties to file their Stipulation of Dismissal with Prejudice on or before January 3, 2020. *See* Dkt. No. 28.

### ***The Stage of the Proceedings, including the Complexity, Expense, and likely Duration of the Litigation***

29. Plaintiff believes the claims asserted in the Litigation have merit under the FLSA and North Carolina law. However, Plaintiff recognizes the cost and delay of continued proceedings necessary to prosecute the instant action against Defendants through bifurcated discovery, dispositive motions, trial, and appeal. Plaintiff has also taken into account the uncertain outcome and the risk of loss in this litigation regarding Defendants joint employer liability, especially in a complex collective/class-action such as this one.

### ***The Opinions of Plaintiffs' Counsel***

30. Plaintiffs' counsel believes that the settlement set forth in the Parties' Settlement Agreements confers substantial benefit on each one of the named and opt-in Plaintiffs. The damages range between approximately $5,200.00 and $20,500.00. (*See* Plaintiff's Damage Calculations, attached hereto as Ex 1.) Given the overwhelmingly positive response from named and opt-in Plaintiffs' regarding their settlement amounts, they are pleased with the results and the timeframe in which such results have been achieved. Plaintiffs' counsel opines that the settlement is in the best interest of Named and Opt-in Plaintiffs.

### ***The Absence of Fraud or Collusion in the Settlement.***

31. As described *supra*, the settlement in this matter was reached via arms-length negotiations, conducted in the presence and with the advocacy of counsel, and with the assistance of a neutral and experienced third-party mediator, Kenneth Carlson.

32. There is no evidence whatsoever of any coercion or collusion or any other improper dealing that would lead to a finding that the negotiations were in any way unfair.

### *The Probability of Plaintiffs' Success on the Merits and the Amount of the Settlement in Relation to the Potential Recovery.*

33. Although Plaintiffs believe their case is strong, Plaintiffs recognize that it is subject to considerable risk. Among other things, Plaintiffs recognize the risk of not prevailing on the issue of Defendants' joint employment of Plaintiffs. Unfortunately, the risk of losing on this issue, after years of litigation, and if no settlement could be reached with Defendants or if they became financially compromised, could preclude Plaintiffs from recovering anything. This settlement allows Plaintiffs to recover a substantial portion of their actual damages *now*.

34. The risk of obtaining collective/class certification and maintaining it through trial is also present. The Court has not certified or conditionally certified this matter yet, and Plaintiffs anticipate that such a determination would be reached only after intense, exhaustive briefing, and would face uncertainty. Additionally, there is no guarantee that the Court would award liquidated damages in this matter.

35. The amount of the settlement represents approximately 43% of *actual* damages and *without* liquidated damages or interest ($150,000.00 of $346,502.50).

36. Plaintiffs are confident that, in light of the inherent risks in proceeding with litigation, their probability of success, and the amount of the settlement in relation to the potential recovery, render this settlement fair and equitable.

### *Time Spent on the Litigation*

36. As of December 24, 2019, GAH has spent more than 164 hours litigating and settling this litigation, including time spent by attorneys, paralegals, and law clerks.

37. Throughout this case, GAH made efforts to work efficiently and minimize costs. GAH has up to date detailed time records with redactions to protect attorney work product and attorney/client privilege, and they are available upon request for the Court's *in-camera* review.

38. The hours reported are reasonable for a case of this complexity and size. They were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff person participating in the case.

### *GAH's Rate*

39. As a 22-year wage and hour practitioner, my current rate is $650.00 per hour for this type of litigation. Notably, though, all wage and hour individual or collective/class action lawsuits litigated by GAH are done so on a pure contingency fee basis, meaning GAH does not require clients to pay hourly fees or retainers and if a matter does not result in money recovery, GAH recovers no attorney's fees, and is not reimbursed for any out-of-pocket expenditures.

40. Since January 2013, (when I started my practice), my rate has increased by less than 10%, from $595 per hour to $650 per hour, which is a fair change proportionate to the risk associated with contingency fees and the firm's growth, high demand, and increased experience in wage and hour litigation. GAH's rates are consistent with the usual and customary hourly rates for the type of work GAH performs, as established in similar collective/class action matters, nation and state-wide. *Rehberg v. Flowers Banking Co. of Jamestown, LLC,* No. 3:12-cv-00596, Dkt. 250 (W.D.N.C. June 30, 2017) (approving hourly rates ranging from $375 per hour (associate) to $975 per hour (partner); *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 260 (E.D. Va. 2009) (approving as reasonable rates ranging from $440 to $775 for partners and $295 to $525 for associates); *Dooley v. Saxton*, No. 1:12-cv-01207-MC, ECF No. 187 (D. Or. Oct. 19, 2015) (approving as reasonable rates ranging from $375 to $790 per hour); *Slipchenko v. Brunel Energy, Inc.*, No. CIV.A. H-11-1465, 2015 WL 338358, at *19 (S.D. Tex. Jan. 23, 2015) (approving as reasonable "$240–$260 for paralegals, $415–$530 for associates, and $635–$775 for partners"); *Parker v. Dish Network, L.L.C.*, No. 4:11-cv-1457, ECF No. 63 (N.D. Cal. Feb.

13, 2012), granted, ECF No. 87 (Apr. 17, 2012) ($530 to $710 for partners and $350 for associates).

41. GAH's hourly rate(s) have also been separately approved for payment by courts in other litigation. *See, e.g., Berber v. Hutchison Tree Serv.,* No. 5:15-CV-143-D, Dkt. 127 (E.D.N.C. May 29, 2019) ("[p]laintiff's [c]ounsel are awarded attorneys' fees in the amount equal to one-third of the Maximum Gross Settlement Amount (i.e., $1,000,000.00)."); *Kincaid v. Courier Express/Charlotte, Inc., et al,* 1:18-cv-707-AT, Dkt. 87 (N.D. Ga Jan. 31, 2019) ("[p]laintiff's [c]ounsel are awarded attorneys' fees in the amount equal to one-third of the Maximum Gross Settlement Amount (i.e., $533,333.33) should the Court grant final approval. . .."); *Velasquez-Monterrosa v. Mi Casita Restaurants*, No. 5:14-CV-448-BO, 2016 WL 1703351 (E.D.N.C. Sept. 26, 2017) (approving GAH's former $595 rate and approving one-third of the settlement fund for class counsel's attorneys' fees); *In Re Gentiva Health Services Inc.*, No: 1:14CV01892-WBH, Dkt. 113 (June 22, 2017) (approving GAH's former $595 rate as the basis of a lodestar crosscheck for a common fund award that was approved by the court in nationwide action); *Tomkins v. Amedisys*, No. 3:12-cv-1082 (D. Conn. 2016) (approving GAH's $595 rate of three years ago as the basis of a lodestar crosscheck for a common fund award that was approved by the court in nationwide action); *McLaurin v. Prestage Foods*, 2012 U.S. Dist. LEXIS 13086 (E.D.N.C. Feb. 3, 2012) (same, at the then-charged lower rate of $385 per hour, while GAH was a firm associate, not owner, and before attaining an additional seven years of collective/class action experience both locally and in nationwide actions, and stating, "[T]he court [allows] the motion for attorneys' fees and awards attorneys' fees . . . . [t]he court finds this amount to be reasonable in light of the complexity of the case, the history of the litigation, and the results obtained").

### *Plaintiffs Counsels' Lodestar*

42. As of December 24, 2019, GAH's lodestar is $53,314.50.

43. GAH's lodestar calculation is made based upon our current billing rates for each timekeeper, multiplied by their recorded hours.

| Timekeeper | Position | Rate | Hours | Lodestar |
|---|---|---|---|---|
| Hernandez, Gilda A. | Attorney | $650 | 39.9 | $25,935.00 |
| Smith, Charlotte | Attorney | $275 | 69.1 | $19,002.50 |
| Tucci, Robert | Attorney | $190 | 36.5 | $6935.00 |
| Kreuz, Rachael | Sr. Paralegal | $190 | 5.1 | $969.00 |
| Romero, Michelle | Paralegal | $110 | 4.3 | $473.00 |
| **Total** | | | **154.2** | **$53,314.5** |

44. The time worked on this case overall is more substantial than the time set forth above. In this fee petition, I have excluded time worked by individuals who had very limited involvement in the litigation, generally assisting when the regular paralegals were unavailable, or any other time that I did not believe should be included in an exercise of the Firm's billing judgment. In total, I have excluded $900.00. With this reduction, I believe that the remaining time was reasonably and necessarily expended in the prosecution of this action on behalf of plaintiffs. In addition, work was done even after the settlement in principle was reached. Such time includes, but is not limited to, reviewing, and/or editing the draft of the settlement agreement, drafting the motion for approval, proposed order, brief in support, declaration(s), and exhibits, and that time is included here.

45. If the Court grants approval to the Parties' proposed settlement agreement, Plaintiffs' Counsel also expects to respond to more inquiries from Plaintiffs after that approval

order, especially after checks are issued.

46. In Plaintiffs' Counsel's experience, settlements of this nature and size require a substantial ongoing commitment. Plaintiffs' Counsel undertook to prosecute this action without any assurance of payment for their services, litigating the case on a wholly contingent basis in the face of tremendous risk. Wage and hour cases of this type are, by their very nature, complicated and time-consuming. Lawyers undertaking representation of large numbers of affected employees in wage and hour actions inevitably must be prepared to make tremendous investment of time. Plaintiffs' Counsel stood to gain nothing in the event the case was unsuccessful.

I declare under penalty of perjury, under 28 U.S.C. § 1746, under the laws of North Carolina that the foregoing is true and correct to the best of my knowledge.

Executed this 24 December 2019

*/s/Gilda Adriana Hernandez*
Gilda A. Hernandez (NCSB #36812)
**THE LAW OFFICES OF GILDA A. HERNANDEZ, PLLC**
1020 Southhill Drive, Suite 130
Cary, NC 27513
Telephone: (919) 741-8693
Facsimile: (919) 869-1853
ghernandez@gildahernandezlaw.com

*Attorney for Plaintiffs*